IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEFFREY D. COX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV652 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jeffrey D. Cox, brought this action to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court has before it the certified administrative record and cross-motions for judgment (Docket Entries 7, 10, 12). For the reasons set forth below, the Court recommends that Defendant's motion (Docket Entry 12) be granted and Plaintiff's motion (Docket Entry 10) be denied, and that the Commissioner's decision be affirmed.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI in May 2012, alleging a disability onset date of July 1, 2010 (Tr. 175-86.)[1] At the hearing Plaintiff was allowed to amend his disability

---

[1] Transcript citations refer to the administrative record which was filed with Defendant's Answer. (Docket Entry 7.)

onset date to May 2, 2012. (Tr. 31.) The application was denied initially and again upon reconsideration. (Tr. 76-77, 105-06.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 140-41.) Present at the hearing were the ALJ, Plaintiff and his attorney. (Tr. 26-50.) On May 9, 2014, the ALJ determined in a written decision that Plaintiff was not disabled under the Act. (Tr. 9-25.) The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (Tr. 1-6.)

## II. THE STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[It] 'consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *Richardson*, 402 U.S. at 401. The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding

that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

Thus, "[a] claimant for disability benefits bears the burden of proving a disability," *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981), and in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]'" *Id.* (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." *Id.* "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." *Id.* (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ("RFC") to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The law concerning these five steps is well-established. *See, e.g., Mastro v. Apfel*, 270 F.3d 171, 177-180 (4th Cir. 2001); *Hall*, 658 F.2d at 264-65.

3

## III. THE ALJ'S DECISION

The ALJ followed the well-established five-step sequential analysis to ascertain whether Plaintiff is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). In rendering her disability determination, the ALJ made the following findings later adopted by Defendant:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engage in substantial gainful activity since July 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Status Post Craniotomy and Resection of Meningioma, with Residual Effects . . . with Migraine Headaches, and Dizziness (20 CFR 404.1520(c) and 20 CFR 416.920(c)).
   . . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
   . . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [RFC] to perform a wide range of medium work as defined in 20 CFR 404.1567(c) and 20 CFR 416.967(c).

> The claimant can stand and walk for 6 hours in an 8-hour workday; he can sit for 6 hours in an 8-hour workday; and he can lift and carry, and push and pull 50 pounds occasionally and 25 pounds frequently. The claimant can never climb ladders, ropes or scaffolds, and he must avoid concentrated exposure to dangerous moving machinery, and unprotected heights.

(Tr. 14-15.) In light of the above findings regarding Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (Tr. 19.) Based upon Plaintiff's age, education, work experience, and his RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can performed." (Tr. 20 (citing 20 C.F.R. §§ 404.1560(c), 404.1566, (a), 416.960(c), and 416.966)). Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 32.)

## IV. ANALYSIS

Plaintiff contends that the ALJ erred by failing to include work related limitations in the RFC due to his migraine headaches. (Docket Entry 11 at 4-7.) Plaintiff further asserts that "it is logically inconsistent for the ALJ to admit that an impairment is 'severe' at Step 2 and then include no work related limitations for that impairment in the RFC." (Id. at 4.) "However, the finding at step two that Plaintiff has a severe impairment . . . does *not require* the ALJ to include any limitations from such impairment when stating the Plaintiff's RFC." *Carver v. Colvin*, No. 1:13CV13, 2015 WL 4077466, at *4 (M.D.N.C. July 6, 2015) (unpublished) (emphasis in the original). Determining whether an impairment is severe at step two is a "de minimis test" structured to disposed of unmeritorious claims. *Chappell v. Colvin*, No. 1:10CV384, 2014 WL 509150, at *4 (M.D.N.C. Feb. 7, 2014) (unpublished); *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (unpublished) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement."). "A finding of *de minimis* limitations is not proof that the same limitations have the greater significant and specific nature required to gain their inclusion in an RFC assessment at step four." *Chappell*, 2014 WL 509150, at *4.

Here, the ALJ discussed in detail Plaintiff's chronic headaches. The ALJ states that Plaintiff reported to his neurologist that he had ongoing daily headaches in April 2013. (Tr. 16, 309.) In May 2013, Plaintiff "reported persistent mild retro-orbital headaches." (Tr. 17, 344.) The ALJ also noted that in July 2013, Plaintiff complained that he had headaches every day or every other day. (Tr. 17, 314.) The ALJ also described Plaintiff's hearing testimony in which Plaintiff stated his headaches gave him sharp head pain. (Tr. 17, 44.) Thus, it is clear the ALJ took Plaintiff's headaches into account.

The ALJ also noted that Plaintiff testified that the headaches did not bother him as much if he took his medication. (Tr. 18, 46.) In addition, the ALJ gave "significant weight" to the opinion of the non-examining state agency medical consultant, Dr. Frank Virgili M.D., who opined that the claimant retained the capacity to do medium work. (Tr. 84). The ALJ found that Dr. Virgili's opinions are supported by the results of several examinations in the record. (Tr. 19 (citing 300, 311, 314-15, 320, 349)). Dr. Virgili discussed Plaintiff's headaches in his RFC assessments. (Tr. 84, 93, 102.) It is clear that the ALJ relied on Dr. Virgili's assessment because the RFC almost mirrors Dr. Virgili's findings. (Tr. 15, 84, 93,102.) The ALJ further limited Plaintiff to never climbing ladders, ropes, or scaffolds. (Tr. 15.)

Additionally, the ALJ gave little weight to the medical findings and opinions of the claimant's treating physician, Dr. Pool. (Tr. 19.) The ALJ acknowledges that Dr. Pool was claimant's neurosurgeon and that his opinions must be given very careful consideration. (*Id.*) However, the ALJ noted that, on June 13, 2012, Dr. Pool stated that Plaintiff was doing well after his surgery and instructed Plaintiff "to increase his activities." (Tr. 16, 300.) On September 12, 2012, and again on September 14, 2012, Dr. Pool stated that Plaintiff was

6

unable to work. (Tr. 16, 347.) On September 20, 2012, Dr. Pool cleared Plaintiff to "engage in full activities." (Tr. 16, 349.) On April 2, 2013, Dr. Pool opined that Plaintiff was unable to work in any capacity. (Tr. 17, 346.) On April 23, 2013, Dr. Pool completed a form which stated that Plaintiff was not able to work for 2 months, but a note at the bottom of the form stated that "p[atien]t . . . does not want this note." (Tr. 17, 348.) The ALJ states that "[t]he signature does not appear to be that of the physician." (Tr. 19.) Finally on May 2, 2013, Dr. Pool opined that Plaintiff was "permanently and totally disabled." (Tr. 17, 344.)

The ALJ gave little weight to the opinions of Dr. Pool because he found them to be inconsistent with the results of his own neurological examinations of the claimant; with "his opinion rendered on September 20, 2012, that the claimant was free to engage in all activities and with the results of office visits with neurologists and primary care providers." Tr. 19 (internal citation omitted); *Carver v. Colvin*, No. 1:13CV13, 2015 WL 4077466, at *4 (M.D.N.C. July 6, 2015) (finding that the ALJ did not have to add limitations to the RFC to account for the plaintiff's left eye blindness because the ALJ extensively discussed the plaintiff's visual impairments and placed limitations in the RFC regarding the plaintiff's vision that where consistent with the findings of a consultant examiner); *Durham v. Colvin*, No. 1:10CV405, 2015 WL 457939, at *10 (M.D.N.C. Feb. 3, 2015) (concluding that the opinion evidence and medical records did not indicate that Plaintiff needed limitations to satisfy the severe impairment findings at step two); *see also Wiseman v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-2521, 2016 WL 3747533, at *2 (D. Md. July 11, 2016) (finding that the ALJ's decision to not add limitations to the RFC regarding the plaintiff's asthma was supported by substantial evidence "because the medical record documents only a few episodes of acute exacerbations"); *King v. Colvin*, No.

7

6:13-CV-02101-DCN, 2015 WL 1313085, at *16 (D.S.C. Mar. 24, 2015) (reasoning that the ALJ's decision to not provide limitations for the plaintiff's gastritis, GERD, and lactose intolerance was supported by substantial evidence because "objective findings were relatively benign" and the plaintiff's health improved when he followed treatment protocols).

In addition, the ALJ noted Plaintiff's "disability-seeking behavior." (Tr. 18.) On April 17, 2013, Plaintiff asked Dr. Charles Willis to write a letter keeping him out of work but Dr. Willis stated that he "made [Plaintiff] aware that [he] would not do that." (Tr. 311.) In making the RFC finding, the ALJ expressly weighed Plaintiff's own statements regarding the severity and limiting effects of his symptoms, the objective medical findings, and course of treatment. (Tr. 15–19). Based upon the foregoing, the undersigned concludes that the ALJ's RFC analysis is based upon substantial evidence and without legal error.

Plaintiff faults the ALJ for relying on neurological examinations to determine that Plaintiff's headaches were disabling because neuroimaging examinations cannot detect headaches. (Docket Entry 11 at 5-7.) However, Plaintiff takes the ALJ's statement out of context. The ALJ stated that

> based on the results of several neurological examinations, there is no evidence in the record of any neurological impairment or combination of impairments that would preclude the claimant from standing, walking, or sitting for 6 hours (with normal breaks) in an 8-hour workday, or from lifting and carrying objects of medium weights.

(Tr. 18-19.) (internal citations omitted). The ALJ simply concluded that the neurological examinations did not suggest Plaintiff was incapable of performing medium work. The ALJ is obligated to take into account all of the medical evidence. *Sanford v. Colvin*, No. 1:14CV885, 2016 WL 951539, at *2 n.3 (M.D.N.C. Mar. 9, 2016) ("RFC is to be determined by the ALJ

8

only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms . . . .") (internal citation and quotation omitted). The ALJ must also determine whether all of Plaintiff's other severe impairments, including status post craniotomy and resection of meningioma, combine to make Plaintiff disabled. *Id.* ("an ALJ must consider the combined effect of all physical and mental impairments when determining a claimant's disability status") (internal citations omitted). Thus, neurological examinations may shed light of the impact of these impairments. Furthermore, the ALJ separately addresses Plaintiff's headaches elsewhere. Therefore, the ALJ appropriately took Plaintiff's neurological examinations into account.

Additionally, Plaintiff contends that the ALJ incorrectly reasons that Dr. Pool made inconsistent statements. Plaintiff asserts that "[t]he ALJ . . . found that Dr. Poole's 2013 opinion was inconsistent with Dr. Poole's statement from a year earlier where he noted that [Plaintiff] was clear to engage in full activities." (Docket Entry 11 at 7.) According to Plaintiff, "[t]he ALJ . . . took this statement out of context . . . [because] [t]his statement was made a couple of months after [Plaintiff's] brain surgery when Dr. Poole noted . . . 'that the headaches . . . are reasonably normal following craniotomy and should dissipate with time.'" (Docket Entry 11 at 7.) Plaintiff further asserts that "[a]s time went on . . . [Plaintiff's] headaches did not dissipate." (*Id.*) However, the ALJ correctly expressed doubts regarding the creditability of Dr. Pool's opinions. First, the ALJ noted that Dr. Pool told Plaintiff "to increase his activities." (Tr. 16.) A month later the ALJ noted Dr. Pool reported that Plaintiff "was doing reasonably well, although [Plaintiff] complained of some intermittent headaches[,] . . . [his] neurological functions were normal . . . . On the same day Dr. Pool opined that Plaintiff was

9

Case 1:15-cv-00652-TDS-JLW   Document 14   Filed 08/25/16   Page 9 of 11

unable to work. (*Id.*) A little over a week later, Dr. Pool reported that Plaintiff was able to engage in full activities. (*Id.*) Eight months later, Dr. Pool completed a form which stated that Plaintiff was not able to work. (Tr. 17.) Three weeks later Dr. Pool determined that Plaintiff was unable to work for 2 months. (*Id.*) Finally, only nine days later, Dr. Pool opined that Plaintiff was permanently and totally disabled. (*Id.*) The ALJ expressly noted the inconsistencies between Dr. Pool's September 20, 2012, opinion, finding that Plaintiff could engage in full activities, and his other opinions before and after in which Dr. Pool found that Plaintiff could not work. The ALJ also documented the inconsistences with respect to how long Dr. Pool opined that Plaintiff should be out of work.

In addition, the ALJ called into question the authenticity of one of Dr. Pool's opinions, in which he stated that Plaintiff was unable to work for 2 months, because the signature for this statement did not appear to be Dr. Pool's. (Tr. 19.) The ALJ noted Plaintiff's disability-seeking behavior and how it was documented that Plaintiff did not want the opinion from Dr. Pool indicating that he was disabled for two months. (*Id.*) Further, it was only nine days later when Dr. Pool's opinion changed because he found that Plaintiff was permanently and fully disabled. This abrupt change in Dr. Pool's opinion, after Plaintiff acknowledged that he did not want a note explaining that he was disabled for two months, reinforces the ALJ's concerns regarding the authenticity of Dr. Pool's opinion and the ALJ's assertion that Plaintiff exhibited disability-seeking behavior. Lastly, the ALJ correctly noted that Dr. Pool's statements regarding whether Plaintiff was unable to work or disabled are issues left to the Commissioner. *Id.*; *Carter*, 2016 WL 1735885, at *13 (unpublished) (citing 20 C.F.R. § 404.1527(a)(2)) (finding that a physician's opinion "that Plaintiff 'is quite disabled' does not qualify as a 'medical

opinion' generally entitled to deference"); *Ballard v. Colvin*, 90 F. Supp. 3d 470, 477 (M.D.N.C. 2015) (unpublished) (finding that the ALJ properly rejected the portion of the physician's medical opinion concluding that the plaintiff was "disabled" or "unable to work") (internal citations omitted). Thus, the ALJ's conclusion that Dr. Pool's opinions were inconsistent has merit and the other issues with Dr. Pool's opinions, highlighted above, were problematic allowing the ALJ to give his opinions little weight.

## V. CONCLUSION

For the reasons stated herein, **IT IS THEREFORE RECOMMENDED** that the Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 10) be **DENIED,** that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be **GRANTED**, and that the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
August 25, 2016